Argued May 5, affirmed May 18, 1915.

## TROWBRIDGE *v.* GILLETTE.

(148 Pac. 876.)

**Specific Performance—Right to—Evidence.**

1. Evidence *held* insufficient to show such part performance that the court would grant specific performance of a parol agreement to convey realty.

From Grant: DALTON BIGGS, Judge.

In Banc.   Statement by MR. JUSTICE BENSON.

This is a suit by B. C. Trowbridge against Earl V. Gillette, Mary Gillette, W. E. Gillette, Augusta Gillette, F. D. Shaw, R. L. Shaw, Alpha Z. Gillette, Delia W. Fisk, D. Walter Fisk, and P. Snyder, for the specific performance of a parol agreement to convey real property and to quiet title to the same. From a decree in favor of defendants, plaintiff appeals.

                                        AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. A. D. Leedy.*

For respondent there was a brief with oral arguments by *Mr. J. E. Marks* and *Mr. A. M. F. Kirchheiner.*

MR. JUSTICE BENSON delivered the opinion of the court.

1. Plaintiff had for a long time been the owner of the northeast quarter of the northeast quarter of section 26, township 13 south, range 31 east of Willamette Meridian. The county road ran across the southern extremity of the tract, leaving a narrow strip south of the road which was 80 rods long, 21 rods wide at the west end, and 17 rods wide at the east end. The piece of land south of the road was sold in 1891 to T. A. Willis, who, in May, 1893, sold the same to A. C. Gillette. Plaintiff testifies that some time in the fall of 1893 Gillette was in his debt for a load of apples, and came to his house to settle the claim, proposing that plaintiff accept the tract of land above described as lying south of the road in full payment; that he accepted the offer, but that no conveyance of title was made; that Gillette promised to turn the Willis deed over to one McHaley, who was to act as scrivener in the preparation of the proposed conveyance; that very shortly thereafter he again saw Gillette, and asked for the conveyance, and Gillette again promised that McHaley should prepare it; that Gillette died in 1893; and that in the fall of the same year, after Gillette's death, he called upon McHaley for the Willis deed, but was refused. Plaintiff is corroborated in most of his testimony by his wife and stepson, who at the time of the alleged contract was about 15 years of age. Plaintiff further testifies that he has paid the taxes on

the land since 1893, except for the year 1911, and it was subsequently stipulated by counsel that for the years 1893 and 1894 the land was not upon the tax-roll, and was not assessed to anyone; that the same is true of the years 1900 and 1901; that for 1911 the land was assessed to, and the taxes paid by, the heirs of A. C. Gillette, and the remaining acres of the legal subdivision were not assessed to anyone; that for the other intervening years between 1893 and 1913 the particular legal subdivision as a whole, was assessed to plaintiff and the taxes paid by him. It clearly appears that Gillette did not die until April 10, 1896; that the tract of land below the road, and which is the subject of this suit, was never inclosed, and was of no use or value except for the wild grass or pasturage thereon; that the only act of actual dominion over the same, known to any of the parties, was the effort of Willis, during his ownership, to dig a well thereon. On July 26, 1913, the Gillette heirs, including the widow, conveyed, the land by warranty deed to the defendant Snyder, who has since claimed title and right of possession thereto. It is stipulated that McHaley has been dead for several years. Plaintiff, prior to the purchase by Snyder, informed him that he (plaintiff) was the owner of the land. This constitutes the substance of the evidence so far as it is of serious import.

We are of the opinion that the plaintiff has not made out a case which would warrant a court of equity in decreeing specific performance, particularly in the light of the fact that his suit is brought at so late a date, 20 years after the making of the alleged contract, at a time when the most important witnesses are dead. There has been no such performance as would justify the exercise of this extraordinary power of the court.

Taking up the question of adverse possession, it is sufficient to say that the evidence discloses the fact that nobody has had any such possession as would satisfy an adverse claim.

It follows that the decree of the trial court must be affirmed, and it is so ordered.        AFFIRMED.